Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good morning and welcome to the third day of our session. Judges Newsome, Choflat and I are very happy to have you with us. We were supposed to be in Jacksonville for this session, but obviously the virus had other ideas. But hopefully with advent of the vaccine and the growing numbers of people inoculated, we'll soon be able to return to our normal procedures. In the meantime, we're happy to have you with us. We had some technical issues, particularly on my end on Tuesday. So if we have any of those with you or with us, just hang in there and we'll try to fix them as quickly as possible and get everybody up online again. With that, we're ready to get started. We obviously don't have a light system for you, but there's a clock on the corner of your screen that tells you how you're doing with time. And Valerie, as our courtroom deputy, will also give you a two-minute warning so that you'll have an idea of when your time is drawing to a close. With that, we're ready to begin with our 1-4-3 United States versus Jerry Sanchez Carrasquillo. And we'll begin with Ms. Howard. Thank you, your honor. Good morning, and may it please the court. Catherine Howard on behalf of Jerry Carrasquillo. I'd like to start with the district court's undisputed Jones error, which requires remand because it has resulted in a record that is insufficient to review Mr. Carrasquillo's safety valve arguments. And there are three points I'd like to make about that insufficiency. First, at sentencing, neither the government nor the district court in its findings mentioned the safety valve distinct legal standard, making it unclear if the court resolved that objection or applied the proper standard in doing so. Second, under Carrillo-Ayala, even if evidence is sufficient to show that a firearm possessed, to show that a defendant possessed a firearm in connection with an offense, a defendant may still be safety valve eligible if he negates that connection by a preponderance of the evidence. Well, let me ask you, let me ask you a theoretical construct question on that point, if I could, Ms. Howard. At the end of the day, putting aside the burdens and the presumptions under both 2D1.1 and 5C1.2, each one of those provisions has an in-connection requirement, right? And putting aside for a moment your sufficiency of the evidence argument, didn't the district court find here that Mr. Carrasquillo's possession definitely was connected with the cocaine and that he intended to drive off with enough, given that connection is an ultimate prerequisite for each one of those two provisions? So, I think it's not enough here. And I think the reason is because it's unclear when you look at the record in context, what exactly the court meant when it said that it was definitely connected. The reason is because, you know, it could be that the defense, that the court was talking about whether Mr. Carrasquillo had shown that it was clearly improbable that there was a connection. But the other reason is because we don't have anything in the record showing that the court considered Mr. Carrasquillo's evidence negating the connection between the offense and the firearm. It's completely silent as to Mr. Carrasquillo's evidence. Let me just play devil's advocate on one more thing and then I'm done and I'll let Judge Newsom go. There are two other things in the record that possibly support the district court's finding. One is that Mr. Carrasquillo went into the residence, took the package and went back into the truck with it before he returned to the residence once law enforcement arrived, right? Which indicates, or at least suggests or allows an inference that he was going to leave in the truck with the cocaine. And the second possible fact is that they found 250 grams of cocaine in the storage locker to which he had the receipt and keys. How does that evidence play into the district court's findings or lack of findings? Sure. So I think, you know, first of all, when you talk about Mr. Carrasquillo going into the residence, we have to look at those actual facts, which is that he didn't have the moment when he actually was perhaps vulnerable with the cocaine, you know, out in the open, he didn't have the firearm with him. He didn't take the firearm with him again when he left, when he actually was, you know, potentially confronted by police. He didn't use the firearm. So I think that negates, you know, some presumption of a connection. But I would also say, I think, Your Honor, you know, you really put your finger on the point here is that the court made inferences about what Mr. Carrasquillo might have done if he wasn't arrested. And I think there's two potential problems with that. One is that the safety valve, specifically when it comes to the firearm requirement, looks to a defendant's actual conduct. It doesn't look to what might happen, you know, in the future, if an arrest hadn't occurred. But I think the bigger problem here too, is that those inferences, you know, that ultimate factual finding by the district court, if that's what we think it was, Mr. Carrasquillo lacked an opportunity to object to that. He lacked an opportunity to tell the district court why that inference was wrong. And so we don't have anything on the record. The district court didn't have the opportunity to clarify what it meant by that, where it gathered, how it put together those inferences. It didn't have the opportunity to fill in any gaps in the record, clarify the standard that it applied. And that's why under Jones, you know, that's what the district court is supposed to do, so that we don't have a record like this, where there's some confusion, there's lack of, there's missing pieces. And so that's why we're asking for the court to remand under Jones, because that's what Jones requires here. All right. Thank you. I'm sorry. No, no, no, it's totally fine. And I just wanted to follow up on a question that Judge Jordan had asked you. I guess I hear you to be making two slightly different arguments. One, I take to be a legal argument that because the district court didn't expressly address safety valve and the under the safety valve, that we require a remand. And secondly, as you were just discussing with Judge Jordan, this factual question about whether the district court made sort of unwarranted inferences about what would have happened had he not been arrested. With respect to the former argument, I mean, is it your position that a remand is required every time a district court doesn't sort of dot I's and cross T's and specifically recite, you know, sort of precise standards? I mean, what if the district courts had said here, instead of definitely connected, had said something like, you know, I find beyond a reasonable doubt that the firearm here was used in connection with the offense. Would that have been sufficient? I think that would certainly be better, Your Honor, because at least, you know, beyond a reasonable doubt is some kind of legal standard that we're looking at that maybe you can place in a hierarchy with clearly improbable or not probable. But I think the problem here, and I want to be clear that the district court, I'm not saying there needs to be magic words or that in every case the district court needs to give out, you know, a detailed analysis with every I dotted and every T crossed. But in this specific case, with this specific record, where Mr. Karaskia raised two objections that were similar but distinct, and we don't have anything from the district court acknowledging that distinction or acknowledging, you know, the specific legal burden that Mr. Karaskia had, I just don't think there's enough on the record in this case to know that the district court understood or applied the correct analysis. So I guess... So is your objection then, just to kind of parse them out, is your objection that the district court didn't mention the safety valve issue or that the term definitely connected isn't specific enough? Because definitely connected, I don't know that I see a whole lot of philosophical space between definitely connected and beyond a reasonable doubt. Definite sounds pretty definite. But maybe your position is that even if you do sort of, you know, even if the logical, you know, sort of necessity of the of the finding is good enough, if you haven't, if the district court hasn't mentioned the safety valve standard, then it just doesn't matter what he says. I think it's important for us, for the record, to show that the district court realized that it was resolving two separate objections. I don't know that it had to necessarily list out exactly the safety valve standard, but on this record, it's just the district court that was silent as to the safety valve standard. The government, right before the Thank you. A weapon was present, and it was clearly improbable that there was a connection. And it told the district court that it should adopt the PSR in its entirety based on that standard. And then immediately after that, you have the district court make this short series of findings and summarily adopt the PSR. I mean, I think in light of that record, it's unclear that the district court knew or applied the right standard. And so because the respects, I think this is a case where Jones would have remand for the district court to clarify that. And it's not just and I want to briefly mention a couple other points in the record that I think are important, why the record is insufficient, or at least ambiguous and why the Jones error warrants remand. So another thing would be in the PSR addendum, probation did respond to both of Mr. Carrasquillo objections. But then, in conclusion, it made a misleading statement. It said if the court agreed with Mr. Carrasquillo, and it removed the 2d 1.1 objection, Mr. Carrasquillo might be eligible for the safety valve. And that's in Doc 88, the last page of the PSR addendum, I believe it's page 39 of the PS of that document. So I think that, you know, to the extent that probation, you know, accidentally was saying that safety valve eligibility depended on Mr. Carrasquillo prevailing on his 2d 1.1 objection. That's an incorrect statement of law. And at the very least, it's misleading. It's confusing. And we don't know if the district court looked to that. Again, I don't want to get too deep into philosophical constructs, but there are different burdens under the two. And so you could, a fact finder could determine that the government didn't meet its burden of proof under 2d 1.1. And that Mr. Carrasquillo didn't meet his burden of proof under 5c 1.2. Right. So think of a case where the where the judge thought that the witnesses on both sides of an evidentiary dispute were not credible. And each side had a burden of proof that that fact finder could find that neither side given the respective burdens succeeded. I think that's absolutely possible, Your Honor. And I think if I could just have one moment, I see my course. Okay. I think that really highlights the difference about what happened here. We don't have, for example, we don't even have a conclusory statement from the court that it considered Mr. Carrasquillo's evidence. It just said, I've seen the video, which is a video from his co-defendants trial, and I feel the PSR is correct. There's not even a conclusory statement that it's considered his evidence or his presentation. And Your Honor mentioned testimony and credibility findings. And I would just note that at the beginning of the hearing, Mr. Carrasquillo's counsel stated that his client wanted to testify that it might be important to establishing his burden of proof. But unfortunately, the way the the court kind of went straight to its findings, there was never an opportunity for his testimony. And there was never an opportunity because of the Jones error for any of that to get clarified before coming up to this court. And I think those are important distinctions and reasons that Jones error warrants remand here. Thank you. All right. Thank you very much, Ms. Howard. Ms. Rhodes. Good morning. May it please the court, Yvette Rhodes on behalf of the United States. Just in listening to the argument that's been presented here this morning, I think that the argument both written and orally does disservice to the record that was before, that is before this court. The context of the sentencing hearing was that the defendant presented basically three points. His points, number one was that the 2D1.1 enhancement should not apply. His point number two was that the safety valve could apply even if the district court properly apply the 2D1.1 notwithstanding the application of 2D1.1 and that he did in fact qualify for the safety valve. And we're talking about a 21 minute hearing where the defendant does articulate what his arguments are and what the standards are. In addition to which the pre-sentence report and the addendum more the application of the safety valve vis-a-vis any application of 2D1.1 and the PSR addendum had appended to it this court's decision in Carrillo Ayala, which parses out the different burdens under 2D1.1 and the safety valve and it supports the defendant's position, which nobody ever disputed and we don't dispute now, that even if the court had applied the 2D1.1 properly, it could still apply the safety valve and he could get the reduction under the safety valve. Can I ask you a question related to the Jones issue? Yes sir. As Ms. Howard indicated at the end of her argument, there was a statement by Mr. Carrasquillo's counsel that he was likely or intended to testify, right? That's correct. Does the denial, does the Jones error warrant a remand in the sense that the district court didn't even ask, or at least to meet to my satisfaction, ask the defense whether they had any evidence to present and then didn't solicit objections? In other words, you could see a fact finder having a certain view of the evidence on issue one where the government has the burden of proof and presents its witness, right? Officer Alvarado. But then when you turn to the other issue where Mr. Carrasquillo has the burden and the lawyer has said that he is likely to testify, he doesn't testify. The judge doesn't ask whether or not there's any testimony or evidence from the defense on 5C1.2 and then doesn't elicit any objections under Jones. Any problem there? I don't think that the record establishes a problem there, Your Honor, because as you state, and as Ms. Howard indicated at the beginning of the sentencing hearing, defense counsel did indicate that Mr. Carrasquillo would possibly testify to support his objections to the pre-sentence report. And then at pages 14 and 15, the judge makes its findings effective as a conclusion with regard to the application of the safety valve in 2D1.1. And then right after he makes his determination, he says, Mr. Sanchez, is there anything you would like to state to the court before I sentence you? But that's allocution. That's not a statement by a district judge of turning to the lawyer on one side of the case and saying, okay, you've now got the burden on 5C1.2. You told me your client was going to testify. Is he going to testify? What you just referred to, at least in normal district judge parlance, seems to me allocution. That's very different than asking a side which has the burden of proof, whether or not it's going to present evidence to try to for that reason, a remand is warranted. Well, the reason why remand is warranted, and this is going back to what I was also saying about how this argument is coming forth as a disservice to not only what transpired in the district court, but also the service to the experienced trial judge in that he had a burden and there's no evidence. There are undisputed pre-sentence report facts which don't establish what he was going to do with that gun in the truck. And he didn't testify, and no one else came forward. Maybe somebody is coming forward to say, you know, tow truck drivers are, you know, in a precarious situation and that's why we have the gun in the truck. There's none of that, and there's no indication that the district court prevented the defendant from saying any of those types of things, presenting any evidence to support that. And the judge said there was no evidence that all he was going to do is deliver that package and that this was just a transaction between drug dealers. There's no evidence of that. There's a proffer of that, but there's no evidence. And the no evidence finding takes care of the burden, whether it's under a preponderance, which is the burden for the safety valve, it certainly takes care of the burden if it's a clearly improbable standard. Therefore, if the defendant had testified to the same thing, we'd be in the same place because at least there would be evidence, but there was no evidence. To any of that, in addition to which, I'm sorry, go ahead. No, it's okay. You can finish. In addition to which, if you look at the precepts report, which the district court found to be correct, there are two places in there where this connection between the legitimate tow truck service and the gun is negated because the defendant said he didn't have any dealings with the tow truck service. And he said he hadn't worked since 2008, so he wasn't getting any income from the towing service either. So that also buttresses the court's finding that there was no evidence to support the defendant's claim that I had the gun in the truck for protection, that's all that it was there for, and that there was no connection between my having the gun in the truck and the kilogram of cocaine that he went into his house and brought back into the truck. You referred, Ms. Rhodes, to a proffer by defense counsel on evidence. What was that proffer? The defense counsel said that the whole transaction was supposed to be between drug dealers. He said that the transaction had been arranged so that there would be no requirement that there would be other people involved. It was just that he was supposed to pick it up and make it available. He was supposed to provide an address for it to be picked up. But other than that, there's no evidence as to any of this. If you look at the sentencing transcript, nobody testified, no other person. Even if we say that the defendant was somehow prevented from testifying on his own behalf, nobody else came in there to say anything about how this was supposed to occur. There being no evidence as to negate the connection. This court has said that if 2D1.1 applies, the defendant has a difficult task in negating the connection between the drugs and the gun if they are in close proximity. We've already discussed that the standard under 2D1.1 is even higher. It's clearly improbable. If there's no evidence, you can't meet that. You can't even meet the scintilla of the evidence standard if there is no evidence. Being that it was clear at all times what the defendant was objecting to, and the district court adopted the pre-sentence report and stated that there was a definite connection between the drugs in the truck and the gun in the truck. And the defendant does not negate that. And it's clear that that finding supports both a disposition of the objection under 2D1.1 and objection under 5C1.2. And his request for a the objections. There's no procedural error. There's no clear error. And there's no Jones error wanting remand in this case. And if the court has no further questions, we will rely on our brief for the rest of our arguments. Okay. Thank you so much, Ms. Rhodes. Thank you. Ms. Howard, you've got your rebuttal time, but I want to eat up a little bit of it at the beginning. So in terms of whether or not Mr. Carrasquillo's failure or inability to testify is concerned, the district court also had evidence from his change of plea hearing where he agreed that he was supposed to drive off with the, that he was supposed to leave with the cocaine and leave it where it was going to be received and somebody was going to add to that statement. So your honor, I think that statement goes to what Ms. Rhodes was talking about where the district court said there's no evidence. It was just going to be, you know, a drop-off for another dealer. That's what Mr. Carrasquillo admitted in his plea hearing. I was just supposed to leave the package where someone else was supposed to pick it up. I think that goes to the nature of this offense and the facts of the offense, which unlike in other cases where we've seen, it was designed not to have confrontation, was not designed to have negotiation. And there are facts supporting that, not just Mr. Carrasquillo's testimony at his change of plea hearing, but also the agent's testimony during the sentencing hearing on cross-examination when he said that's what this kind of scheme is. You know, there wasn't supposed to be any negotiation with a FedEx delivery person and very often these, you know, individuals who are caught up in this are involved by simply receiving the package. That's what the agent testified to. So I do take issue with the fact that the claim that there's no evidence in the record. I think in addition, there's evidence of Mr. Carrasquillo's concealed carry permit, which suggests that, you know, the gun was there on a regular basis, that it had a lawful purpose. The district court never mentions that evidence and the government in fact claimed that that transcript, which we know is not true because we look at other safety valve cases and that's something that the district court will hang its hat on. You know, do I believe the defendant about that? Do I think that the gun had more than one purpose? We don't have anything in the record showing that the district court considered that. And I would just briefly mention as to the tow truck, I do admit there's some ambiguity in the PSR about Mr. Carrasquillo's role with the tow truck company, but I would point this court to the fact that he is listed as a manager for the tow truck company and the tow trucks are listed as assets for him. So I think to the extent that there's any ambiguity about what his role was with the tow truck company, first of all, we don't have any finding from the district court about it. It didn't address it. And I think that just goes once again to why the Jones error warrants remand. If there are these issues that are missing that weren't addressed, the Jones errors is why remand is warranted. And I think finally, the last thing I just want to bring it back to is Mr. Carrasquillo's testimony that he wanted to testify and we do see he didn't get a chance to testify that immediately after his counsel finished speaking, the district court called on the government and immediately after the government's presentation, the district court made its findings and it had already made its findings when it asked Mr. Carrasquillo to testify. We don't know what might happen if Mr. Carrasquillo's testimony was in the record, how that might affect the district court's findings. It certainly would affect this court's ability to review Mr. Carrasquillo's arguments regarding the safety valve and regarding any finding that the district court makes on it. And that's once again, why we're asking this court to simply do what Jones requires, which is to vacate the sentence and remand for resentencing. So the district court can resolve these objections about the safety valve in the first instance. And if there are no other questions, we'll rest on our briefs. All right. Thank you very much, Ms. Howard. Thank you very much, Ms. Rhodes.